STATE v. ED. ALLEN.

(Filed 28 October, 1908).

**Indictment—Burning Barn—Evidence, Sufficient.**

Upon trial under an indictment for burning a barn in violation of Revisal, sec. 3338, there was evidence for the State tending to prove bad blood between the owner and defendant growing out of a previous difficulty, with threats of defendant against the owner and another on that account, and that the barn of the other person was burned previously to the burning of the barn in question; that the barn in question was burned about four o'clock A. M., within 375 yards of defendant's house, in plain sight, and the fire attracted the whole neighborhood except defendant, who said he did not know of it until between nine and ten o'clock, though there was evidence that defendant arose that morning between four and five o'clock; that there were well-defined running tracks from the burnt barn to defendant's house, larger than defendant's shoes, which were followed and he was found on the other side of his house, leaving it with a gun; that defendant was asked to go to the burnt barn, hesitated, refused and then complied and refused to have his shoe measured, but walked off sixty or seventy-five yards and told witness to come and measure the tracks, which was not done. *Held*, sufficient to sustain a verdict of guilty.

INDICTMENT for burning a barn in violation of sec. 3338, Revisal, tried before *Jones, J.,* and a jury, March Term, 1908, of UNION. The defendant was convicted and appealed.

*Assistant Attorney-General Clement* for the State.
*Adams, Jerome & Armfield* for defendant.

BROWN, J. The record presents two exceptions to the rulings of the trial court, one of which has been abandoned here.

The remaining exception is to the refusal of the judge. to charge the jury that the evidence is insufficient to convict.

The evidence is circumstantial in its nature, but amply sufficient in its probative force to justify the court in submitting the guilt of the accused to the determination of the jury.

The evidence tends to prove that the defendant had "bad blood" for the prosecutor, Jim Bivins, whose barn was burned at night on 6 November, 1907, as well as against one Crowder, growing out of the destruction of defendant's crop of corn in July or August of that year; that defendant made threats against both Crowder and Bivins. It appeared, upon cross examination of defendant, that Crowder's barn was burned two weeks before the burning of Bivin's barn. The latter's barn was burned about 4 o'clock in the morning, destroying two mules and other valuable property within 375 yards of defendant's house and in plain sight. The fire attracted to it the entire neighborhood except defendant, who was in his house at the time. In the morning well defined tracks were followed direct from the burned barn to defendant's house. The tracks as they left the barn appeared to be "running tracks." The witnesses examined other side of defendant's house and could find no tracks. Witness testified that tracks were made by a party wearing a brogan shoe of rather large size—larger than Mr. Austin, who wore a No. 8. Defendant testified that he wore a No. 9; also wore brogan shoes. That when witnesses followed these tracks to defendant's house. they saw defendant on the other side of the house, leaving, with a gun on his shoulder; that they called him and told him they had followed the tracks there, and that the tracks went no farther, and asked defendant to go with them over to the burning barn; that the defendant at first declined to go, but later followed them over there.

The evidence further showed, that, when defendant arrived, Mack Bivins asked him to let him measure his shoe,

in, order to see if it corresponded with the foot prints. Defendant refused to do so, and walked off some sixty or seventy-five yards, then called witness and told him to come and measure the track, but witness did not go to defendant. Defendant stated to these witnesses that he did not know the barn was burning until. they came over there, between 9 and 10 o'clock, and told him of it. This statement is highly suspicious because defendant's house was in plain sight of the barn, and prosecutor saw the fire three miles off. Defendant's wife testified that. defendant arose that morning between 4 and 5 o'clock, built a fire and sat by the fire until it was light enough to feed. All these facts and circumstances are not only some evidence, but amply warrant the finding of the jury that the defendant is guilty as charged.

No error.